THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

UNITED STATES OF
AMERICA,
        Plaintiff,

    v.

TERRELL MABRY,

        Defendant.

:         

:     Case No. 3:14-cr-96 (2)

:     Judge Walter H. Rice

:

---

DECISION AND ENTRY SUSTAINING FIRST MOTION FOR
COMPASSIONATE RELEASE (DOC. #194) AND OVERRULING AS
MOOT SECOND MOTION (DOC. #205) OF DEFENDANT TERRELL
MABRY

---

Before the Court are the First (Doc. #194) and Second (Doc. #205) Motions for Compassionate Release of Defendant Terrell Mabry. For the reasons set forth below, the First Motion is SUSTAINED, and the Second Motion is OVERRULED AS MOOT.

I.   **Factual Background and Procedural History**

On May 24, 2016, Defendant was sentenced to 168 months imprisonment after pleading guilty to two counts from the Superseding Indictment: one count of conspiracy to interfere with commerce through robbery, and one count of aiding and abetting kidnapping. (Judgment, Doc. #130, PAGEID 575, citing 18 U.S.C. §§ 2, 1201, 1951; Superseding Indictment, Doc. #45). Defendant is fifty-four years old with a present release date of November 12, 2027.[1]

---

[1] https://www.bop.gov/mobile/find_inmate/index.jsp#inmate_results (last accessed Jul. 15, 2024).

On March 13, 2020, Defendant filed a request to his Warden seeking compassionate release. The Warden denied the request on April 16, 2020. (Inmate Request, Doc. #194-2, PAGEID 814). Defendant filed the First Motion under 18 U.S.C. §3582(c)(1)(A), *as amended by the* Formerly Incarcerated Reenter Society Transformed Safely Transitioning Every Person ("First Step") Act of 2018, Pub. L. 115-391, 132 Stat. 5194, on September 30, 2020.

In the memorandum supporting the First Motion, Defendant states that he "has been diagnosed with end-stage kidney disease and is dependent on dialysis for survival" (Doc. #194-1, PAGEID 795), and that the Plaintiff United States of America's ("Government") Bureau of Prisons's ("BOP") Report of Serious Illness not only recognized his kidney disease, but also his "diabetes mellitus, hyperlipidemia, and hypertension[.]" (*Id.*). Defendant argues that he has never received adequate care while incarcerated, leading to his being found unconscious and non-responsive in his prison cell on three separate occasions between March and June 2020. (*Id.* at PAGEID 796-97).[2]

Defendant claims that he meets the United States Sentencing Commission's ("Commission") policy statement on what constitutes an "extraordinary and compelling reason" for release. (Doc. #194-1, PAGEID 798-99). The Commission set forth two categories as extraordinary or compelling medical reasons: *first*, a

---

[2] As many of the exhibits in support of the First Motion contain Defendant's private health and other health or other confidential information, those documents were filed under seal. (Filing, Doc. #203). The Government does not challenge the authenticity or accuracy of the sealed documents, and the Court has examined the documents and concludes that the First Motion has accurately described them.

2

defendant must be suffering from a terminal illness; or *second*, the defendant's medical condition must "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." (*Id.*, quoting U.S. SENTENCING COMM'N, GUIDELINES MANUAL, § 1B1.13(b)(1)(A), (B)(iii)). Defendant notes that end-stage organ disease, including renal disease, is expressly provided by the Commission as an example of a terminal illness. (*Id.* at PAGEID 799, citing MANUAL, § 1B1.13(b)(1)(A)). BOP has placed Defendant on the seriously ill list due to Defendant's deteriorating condition—he now receives dialysis three times per week, whereas he did not need to receive such when he began his sentence. (*Id.* at PAGEID 799).

Defendant draws the Court's attention to a Greg Cotinola, an inmate who, like Defendant, had end-stage kidney disease, was a patient at the United States Medical Center for Federal Prisoners in Springfield, Missouri ("MCFP Springfield"), and whose health had deteriorated during his incarceration. The district court granted compassionate release, holding that, even though Cotinola did not have a specified life expectancy, his end-stage disease was still an extraordinary and compelling reason for release: "the Commission specifically lists 'end-stage organ disease' as an example of a qualifying terminal illness under the statement." (Doc. #194-1, PAGEID 800-01, quoting *United States v. Cotinola*, 487 F. Supp. 3d 1132, 1133-34, 1136 (D.N.M. 2020)). Given the similarities between Defendant and Cotinola, Defendant urges the Court to find that his end-stage kidney disease

3

is an extraordinary and compelling reason supporting release. (*Id.* at PAGEID

801).[3]  Moreover, Defendant argues that he is required to eat a particularized diet

due to his renal disease (and consequent dialysis) and diabetes (and consequent

insulin treatments), and that his inability to receive that diet—*i.e.*, care for

himself—in prison has caused a substantial deterioration of his condition,

culminating in the three instances of unconsciousness described above. (*Id.* at

PAGEID 805-07).  Defendant notes that that the district court concluded that

Cotinola's end-stage kidney disease, and the inability of MPFC Springfield to

provide a suitable diet for him, had diminished his self-care ability to such an

extent that that diminution was also an extraordinary and compelling reason for

release.  He prays that this Court make a similar finding here. (*Id.* at PAGEID 807-

08, quoting *Cotinola*, 487 F. Supp. 3d at 1136-37).

As to the 18 U.S.C. § 3553 factors, Defendant argues that the time already

served is sufficient, but not greater than necessary, to account for his criminal

activity, as he was not the ringleader of the robbery and kidnapping.  He further

asserts that his deteriorating condition and need for frequent medical care means

that he is not a threat to public safety. (Doc. #194-1, PAGEID 808-09, quoting

*Cotinola*, 487 F. Supp. 3d at 1137; citing Crim. Compl., Doc. #3, PAGEID 12, 18;

Sentencing Memo., Doc. #75, PAGEID 383).  Defendant asserts that, because he

---

[3] Defendant argues extensively that his physical ailments make him specifically vulnerable to
contracting and suffering serious complications from COVID-19. (Doc. #194-1, PAGEID 801-05).
As the undersigned concludes *infra* that Defendant's end-stage kidney disease is itself an
extraordinary and compelling reason supporting release, the Court need not and will not examine
this argument.

4

has satisfied the three 18 U.S.C. § 3582(c)(1)(A) elements, compassionate release is appropriate. (*Id*. at PAGEID 810).

In its memorandum *contra*, the Government concedes that Defendant "has exhausted his administrative remedies and demonstrated an extraordinary and compelling reason for a reduction[.]" (Doc. #196, PAGEID 819). However, it argues that Defendant "has established neither that the section 3553(a) factors favor his release nor that he represents little risk to the community." (*Id*.). While the Government acknowledges that Defendant was not the leader of the criminal group, it emphasizes that he was an active participant in the two violent robberies and kidnapping for which he was convicted. (*Id*. at PAGEID 819-20). The Government states that Defendant did not merely help his co-defendant rob a bank and steal pills from a pharmacy; rather, he also kidnapped two families and personally threatened to kill the members of one. (*Id*. at PAGEID 822). Nor was this an isolated incident; Defendant had a prior criminal history that "included convictions for domestic violence and possession of cocaine[.]" (*Id*.). Further, the Government asserts that, because Defendant committed these crimes while suffering from kidney disease, he is almost, if not just as, dangerous to the community now as he was when he committed the crimes. (*Id*.).

In the Reply, Defendant states that he was not diagnosed with *end-stage* renal disease until he was incarcerated; this later diagnosis, combined with the significant deterioration of his physical condition, means that he cannot pose the threat to the community that he did prior to his arrest. (Doc. #197, PAGEID 826-

5

27). He notes that a district court has held that thrice-weekly dialysis was a definitional restraint on a defendant's ability to threaten the community, and asks that the Court reach the same conclusion here. (*Id.* at PAGEID 827-28, quoting *United States v. Williams*, No. 1:13-cr-370-4, 2020 WL 5097490, *4 (M.D.N.C. Aug. 28, 2020)). Finally, Defendant argues that given his condition, reducing his sentence to time served is "sufficient, but not greater than necessary," to impose just punishment for his crimes. (*Id.* at PAGEID 828-29, citing *United States v. Norris,* 458 F. Supp. 3d 383 (E.D.N.C. 2020)).

On April 26, 2024, Defendant filed the Second Motion.[4] He argues that the extensive restitution he must pay and community service he must perform as conditions of his supervised release will keep him in regular contact with the United States Probation Office for the Southern District of Ohio ("USPO"), thereby diminishing any threat he might otherwise pose to the community upon release. (Doc. #205, PAGEID 882). Further, while the need for Defendant to receive extensive medical care was not a factor in the original sentencing, it weighs heavily in favor of release now. (*Id.* at PAGEID 883, citing 18 U.S.C. § 3553(a)(2)(D); *United States v. Williams-Bethea*, 464 F. Supp. 3d 562, 567-68 (S.D.N.Y. 2020)). Finally, Defendant has served more than half of his sentence,

---

[4] Defendant mistakenly filed the Second Motion in the case *United States v. Mabry*, 3:14-mj-241-SLO ("Magistrate Judge Case") (Doc. #15), on October 6, 2023, to which the Government filed a memorandum *contra* in this case on November 27, 2023. (Doc. #201). The undersigned struck the original Second Motion on March 21, 2024, and ordered Defendant to file the motion in this case. Defendant's filing in this case is virtually identical to the one he filed in the Magistrate Judge Case. Thus, contrary to the Government's caption in its memorandum *contra* (Doc. #206, PAGEID 885), it is responding to Defendant's *second*, not *third*, motion for compassionate release.

the compassionate release would be only for the need to receive medical treatment, and the release would not undercut the other factors this Court must consider in sentencing. (*Id*. at PAGEID 883-84, citing 18 U.S.C. § 3553(a)(2)(A-B), (6)). Defendant argues that he has met all three elements (extraordinary and compelling reason, policy statements of the Commission, 18 U.S.C. § 3553(a) factors) and, thus, compassionate release is warranted. (*Id*. at PAGEID 884).

In the second memorandum *contra*, the Government argues that Defendant has not exhausted administrative remedies with respect to this Second Motion. (Memo. in Opp., Doc. #206, PAGEID 886, quoting *United States v. Lee*, No. 18-20503, 2021 WL 5074428, *2 (E.D. Mich. Nov. 2, 2021); citing *United States v. Alam*, 960 F.3d 831, 834-35, 836 (6th Cir. 2020)). Moreover, the Government claims that Defendant's failure to provide supporting documentation regarding the care he receives and purported inability to receive a transplant at a BOP facility mean that he has not demonstrated an extraordinary and compelling reason for release. (*Id*). Finally, the Government asserts that the horrific nature of Defendant's crimes means that the 18 U.S.C. § 3553(a) factors weigh against release. (*Id*. at PAGEID 886-87).

The matter is ripe for decision.

## II.  Legal Standards

A district court may, in certain limited circumstances, grant what is popularly known as "compassionate release" and modify a term of imprisonment after it has been imposed:

7

> The court may not modify a term of imprisonment once it has been
> imposed except that—in any case—the court ... may reduce the term
> of imprisonment (and may impose a term of probation or supervised
> release with or without conditions that does not exceed the unserved
> portion of the original term of imprisonment), (1) after considering the
> factors set forth in section 3553(a) to the extent that they are
> applicable, (2) if it finds that extraordinary and compelling reasons
> warrant such a reduction . . .(3) and that such a reduction is
> consistent with applicable policy statements issued by the Sentencing
> Commission.

18 U.S.C. § 3582(c)(1)(A)(i) (numeration added). Defendants seeking

compassionate release may file a motion with the district court only after they

submit a request to his or her warden to move for compassionate relief on their

behalf and either (a) the warden denies the request, or (b) the warden does not

respond within thirty days from the submission of the request. *Id*. Exhaustion of

administrative remedies is mandatory; failure to comply with the exhaustion

strictures set forth in the statute deprive a court of authority to entertain the

petition. *Alam*, 960 F.3d at 834 (internal quotation marks and citation omitted)

(First Step Act's exhaustion requirement is, in essence, a "mandatory claim-

processing rule[]" that, when properly invoked, courts must enforce by dismissing

the motion).

   If the district court adjudges that a defendant has not met one of the

elements, then it may overrule a motion for compassionate release without

discussing any of the other elements. *United States v. Elias*, 984 F.3d 516, 519

(6th Cir. 2021). Further, relief under the statute is wholly discretionary; even if a

defendant meets all three elements of the statute, the Court may but need not

order compassionate release. *United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020).

## III. Analysis

### A. First Motion

The Government, as discussed above, concedes that Defendant has fully exhausted administrative remedies, and that his end-stage renal disease is a "compelling and extraordinary reason for release" consistent with the Sentencing Guidelines. (Doc. #196, PAGEID 819). Thus, the only matter before the Court is whether the 18 U.S.C. § 3553(a) factors weigh against release, along with the related question of whether Defendant would be a danger to the community were he released. (*Id.*). As discussed above, the Government emphasizes the seriousness and violent nature of to the robberies and kidnappings, and that he had a significant criminal history prior to the offenses for which he was convicted. The Government asserts that it cannot identify any 18 U.S.C. § 3553(a) factor weighing in favor of release; consequently, the Government argues, Defendant's First Motion must fail. (*Id.* at PAGEID 821-23).

Through the Statement of Facts in the Plea Agreement, Defendant admitted to this Court that he and his co-defendants: broke into the home of an employee of St. Elizabeth Pharmacy, held the employee's wife hostage until the employee provided keys and security codes to the pharmacy, and stole prescription drugs after obtaining access to them. Defendant then stayed at the residence to intimidate the employee and his family from calling law enforcement. (Doc. 60,

PAGEID #292). Undeterred, several months later, as part of a plan to rob a location of U.S. Bank, N.A., Defendant entered the house of a branch employee and, while brandishing a firearm, forcibly restrained first the employee's husband and children, and later, the employee herself. (*Id*. at PAGEID 293). Defendant also forcibly moved the employee and her family from their house into a car for the purpose of transporting them to a different location before being told by the operation's ringleader to return the family members to their house. (*Id*. at PAGEID 293-94).

In sum, by his own admission, Defendant forcibly restrained multiple innocent people, including children, and removed them from their home with the intent to take them to an unknown location. He did so while attempting to undermine trust and confidence in a publicly-regulated depositary institution.[5] The heinousness of these acts cannot be overstated, and Defendant's status as an accomplice, rather than leader, does not diminish their severity. *See* 18 U.S.C. § 2(a) ("Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."). The Government is right to raise concerns over potential continued threat to the community were he released; indeed, if Defendant merely had, *e.g.*, a health condition that made him susceptible to serious complications from COVID-

---

[5] U.S. Bank deposits are insured by the Federal Deposit Insurance Corporation. https://www.usbank.com/splash/safe.html (last accessed Jul. 19, 2024).

19, the Court would have concluded that his threat to the community would have been too grave for Defendant to receive compassionate release.

Nonetheless, the Court is cognizant of Defendant's severely-diminished physical state, specifically, his poorly-controlled diabetes and his degenerative kidney disease, for which, it must be emphasized, he requires dialysis at least three times per week and for which there is no reasonable likelihood of improvement.[6] These illnesses are incapacitating and sharply diminish any threat he might pose to the community—especially when, as Defendant notes, he will be under the auspices of the USPO during his period of supervised release. (Doc. #197, PAGEID 828-29). Further, almost four years have elapsed since the First Motion was filed, meaning that Defendant has served, when including pre-sentence credit, almost nine years of his sixteen-year sentence. Plaintiff's serving more than half of his sentence and very low risk of recidivism makes time served "a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). As Defendant has met all three elements set forth in *Tomes* and elsewhere, and his severe, end-stage illness weigh the equities heavily in favor of compassionate release at this time, the First Motion is SUSTAINED.

**B. Second Motion**

As compassionate release is warranted under the First Motion, the Second Motion is OVERRULED AS MOOT.

---

[6] https://www.mayoclinic.org/diseases-conditions/end-stage-renal-disease/symptoms-causes/syc-20354532 (last accessed Jul. 19, 2024).

**C.   Release**

Defendant is to be released from the custody of BOP to the home of Yvette Mabry, Defendant's mother, in Dayton, Ohio (Doc. #194-1, PAGEID 809), within twenty days of entry, for a period of supervised release as set forth in the Judgment.  (Doc. #130, PAGEID 578-81).  Sadly, based on its experiences and on reasoning the Court believes unnecessary to place into this document, it appears that this Defendant and the truth are strangers.  Therefore, supervision is to be strict, with primary focus on Defendant's health and his adherence to whatever medical and pharmacological regimen is prescribed by his nephrologist, whom he must see within sixty days of release and whose medical assessment of Defendant's medical condition must be furnished to the Court, Counsel of Record and the USPO within seven days of Defendant's first appointment with that specialist.

The USPO must recommend to the Court any modification of defendant's supervised release status and the conditions ordered thereunder deemed necessary as a result of his present medical condition as documented by the renal specialist, *i.e.*, whether Defendant is physically capable of work and/or performing community service.  If the Government otherwise wishes to modify the terms of supervised release, it shall file a motion to that effect with the Court within fourteen days of this entry.

## IV.    Conclusion

For the reasons set forth above, Defendant's First Motion (Doc. #194) is

SUSTAINED and Second Motion (Doc. #205) is OVERRULED AS MOOT.

Defendant's sentence set forth in the Judgment (Doc. #130) is reduced to time

served as of the date of entry.  Defendant shall be released from BOP custody to

the home of Yvette Mabry within twenty days of this entry to begin a period of

supervised release of five (5) years, and shall be evaluated by a nephrologist within

sixty days of release.  If the Government wishes to modify the conditions of

supervised release, then it must so move the Court within fourteen days of this

entry.

The captioned case remains terminated upon the docket records of the

United States District Court for the Southern District of Ohio, Western Division, at

Dayton.

IT IS SO ORDERED.

WALTER H. RICE, JUDGE
UNITED STATES DISTRICT COURT

July 24, 2024

13